# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| D.A., a minor, by and through his mother B.A.; and X.A., a minor, by and through his mother B.A., | Case Number:  23-cv-423 |
| *Plaintiffs,*<br><br>v. | Hon. _____ |
| TRI COUNTY AREA SCHOOLS; ANDREW BUIKEMA, in his individual capacity; and WENDY BRADFORD, in her individual capacity. | **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS** |
| *Defendants.* | **JURY TRIAL DEMANDED** |

Conor T. Fitzpatrick (P78981)
Harrison M. Rosenthal (Pa. Bar. No. 332452)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
EXPRESSION
510 Walnut St., Ste. 1250
Philadelphia, PA 19106
(215) 717-3473
conor.fitzpatrick@thefire.org
harrison.rosenthal@thefire.org

*Counsel for Plaintiffs*

**INTRODUCTION**

1.      This case is about protecting the role of America's public schools as "nurseries of democracy." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021). Our schools train the next generation to live in a country where their neighbors and coworkers might not think, pray, or vote the same way they do.

2.      That pluralistic democracy is made possible by the First Amendment, which protects our right to speak our minds without government punishment. And just as the First Amendment bars viewpoint discrimination in townhalls and public squares, so too does it bar viewpoint discrimination against public school students.

3.      But Defendant Tri County Area Schools (the "School District") and its employees are censoring students who try to express support for former President Donald Trump or opposition to President Joe Biden.

4.      For instance, during the Tri County Middle School "Field Day" in June 2022, School District employees permitted students to wear LGBTQ+ pride flags but ordered students to remove Trump flags.

5.      What is more, the School District prohibits students, including Plaintiffs D.A. and X.A., from wearing apparel containing "Let's Go Brandon," a non-profane and well-known anti-Joe Biden political slogan, even though the School District allows students to wear apparel expressing other views.

6.      The Supreme Court clearly established more than 50 years ago that the First Amendment protects peaceful, non-disruptive political speech at school. America's students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,

393 U.S. 503, 506 (1969). Plaintiffs bring this suit to ensure that America's students remain free to use their Constitutional rights at school, not just learn about them.

## THE PARTIES

### *Plaintiffs*

7.      Plaintiff D.A. is a seventh-grade student at Tri County Middle School. At all times relevant to this Complaint, D.A. was a student in Tri County Area Schools. D.A. lives with his mother, B.A., in Newaygo County, Michigan. B.A. brings this action on behalf of her minor son, D.A.

8.      D.A. opposes President Joe Biden and wants to wear apparel with the anti-Biden political slogan "Let's Go Brandon" to school. But the School District prohibits students from wearing apparel expressing the slogan and School District employees instructed D.A. to remove "Let's Go Brandon" apparel.

9.      Plaintiff X.A. is a freshman at Tri County High School. At all times relevant to this Complaint, X.A. was a student in Tri County Area Schools. X.A. lives with his mother, B.A., in Newaygo County, Michigan. B.A. brings this action on behalf of her minor son, X.A.

10.      X.A. opposes President Biden and wants to wear apparel with the anti-Biden slogan "Let's Go Brandon" to school. But the School District prohibits students from wearing apparel expressing the slogan and School District employees instructed D.A. to remove "Let's Go Brandon" apparel.

11.      D.A. and X.A. are suing because Defendants are violating the First Amendment by censoring the students' peaceful, non-disruptive political expression in school.

2

*Defendants*

12.     Defendant Tri County Area Schools is a school district headquartered in Howard City, Michigan. The School District includes Tri County High School, a public high school located in Howard City, Michigan (grades 9–12), Tri County Middle School, a public middle school in Howard City, Michigan (grades 6–8), two elementary schools, and a preschool.

13.     Defendant Andrew Buikema is employed by the School District as an Assistant Principal at Tri County Middle School, and, in that role, enforces School District policy. Buikema ordered D.A. and X.A. to remove "Let's Go Brandon" apparel despite allowing students to wear apparel with other political and social messages.

14.     At all times relevant to this Complaint, Buikema acted under color of state law as the Assistant Principal of Tri County Middle School.

15.     Defendant Wendy Bradford is employed by the School District as a teacher at Tri County Middle School, and, in that role, enforces School District policy. Bradford ordered D.A. to remove "Let's Go Brandon" apparel despite allowing students to wear apparel with other political and social messages.

16.     At all times relevant to this Complaint, Bradford acted under color of state law as a teacher at Tri County Middle School.

## JURISDICTION AND VENUE

17.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction for civil rights violations under 28 U.S.C. § 1343 because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution;

the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this district and all Defendants reside in Michigan.

19.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district.

<u>FACTUAL ALLEGATIONS</u>

### I.     The Tri County Area Schools Student Handbook

20.     Tri County High School and Tri County Middle School distribute a Student Handbook which includes a dress code policy.

21.     The dress code in place for both schools during the 2021–2022 and 2022–2023 school years provides that:

> Students and parents have the right to determine a student's dress, except when the school administration determines a student's dress is in conflict with state policy, is a danger to the students' health and safety, is obscene, is disruptive to the teaching and/or learning environment by calling undue attention to oneself. The dress code may be enforced by any staff member.

(Ex. A: High School Handbook, at 29; Ex. B: Middle School Handbook, at 24.)

22.     The dress code prohibits clothing "with messages or illustrations that are lewd, indecent, vulgar, or profane, or that advertise any product or service not permitted by law to minors." (Ex. A at 29; Ex. B at 24.)

23.     The Handbook guarantees nondiscrimination "on the basis of race, color, sex, religion, creed, [or] political belief." (Ex. A at 11; Ex. B. at 7.)

24.     The Handbook provides that dress code violations result in discipline including notifying parents, required clothing change, and, after multiple infractions, suspension. (Ex. A at 24; Ex. B at 18.)

## II.    "Let's Go Brandon" is a Popular, Non-Profane Anti-Biden Political Slogan.

25.     "Let's Go Brandon" is a non-profane, non-vulgar political slogan used to express disapproval of President Joe Biden.

26.     D.A. and X.A. oppose President Biden and own sweatshirts with the slogan "Let's Go Brandon."

27.     A photograph of the sweatshirt is depicted here:



28.    D.A. and X.A. wear their "Let's Go Brandon" sweatshirts to express their opposition to President Biden.

29.    The political slogan "Let's Go Brandon" originated at an October 2021 NASCAR Xfinity Series race in Talladega, Alabama. After the race, won by Brandon Brown, members of the crowd chanted "Fuck Joe Biden" during Brown's post-race interview. A television commentator remarked that the fans were shouting "Let's go, Brandon!"

30.    The slogan "Let's Go Brandon" conveys the same opposition to President Biden, sanitized to express the sentiment without using profanity or vulgarity.

31.    "Let's Go Brandon" is not lewd, profane, indecent, vulgar, or obscene.

32.    The slogan "Let's Go Brandon" does not contain sexually explicit language or connotation.

33.    Since October 2021, the slogan "Let's Go Brandon" gained widespread use by members of the public and elected officials as a form of political commentary and criticism of President Biden. The slogan has appeared on broadcast media and as a chant at political rallies, become a massive social media trend, and appears on T-shirts and bumper stickers.

34.    On October 21, 2021, Representative William J. Posey, who represents Florida's Eighth Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 167 Cong. Rec. 5776 (2021).

35.    Representative Posey was not censured, ruled out of order, or disciplined for using the slogan.

6

36.     On October 26, 2021, Representative Mary E. Miller, who represents Illinois' Fifteenth Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 167 Cong. Rec. 5880 (2021).

37.     Representative Miller was not censured, ruled out of order, or disciplined for using the slogan.

38.     On June 7, 2022, Representative Douglas L. LaMalfa, who represents California's First Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 168 Cong. Rec. 5240 (2021).

39.     Representative LaMalfa was not censured, ruled out of order, or disciplined for using the slogan.

40.     In October 2021, Representative Jeffrey D. Duncan, who represents South Carolina's Third Congressional District, wore a facemask adorned with the slogan "Let's Go Brandon" on the floor of the United States House of Representatives.

41.     Representative Duncan was not censured, ruled out of order, or disciplined for wearing the mask.

42.     President Biden's supporters repurposed the "Let's Go Brandon" slogan in mid-2022, as "Dark Brandon"—a pro-Biden internet meme stylizing the President's likeness with heavy contrast or decreased background light to portray him as a superhero protagonist.

## III.    Buikema and Bradford Ordered D.A. and X.A. to Remove "Let's Go Brandon" Apparel.

43.     D.A. and X.A. wish to express their opposition to President Biden by wearing their "Let's Go Brandon" sweatshirts to school.

7

44.     Upon information and belief, before February 2022 and continuing through the present, the School District has not experienced material disruption, substantial disorder, or invasions of the rights of others from Plaintiffs or other students wearing "Let's Go Brandon" or other political apparel.

45.     Upon information and belief, before February 2022 and continuing through the present, Defendants have not received any information which would lead them to reasonably forecast a material disruption, substantial disorder, or invasions of the rights of others if students wore "Let's Go Brandon" or other political apparel.

46.     On or around February 2022, D.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

47.     Buikema stopped D.A. in the hallway between classes and instructed D.A. to remove his "Let's Go Brandon" sweatshirt.

48.     Buikema told D.A. his "Let's Go Brandon" sweatshirt was equivalent to "the f-word."

49.     D.A., fearing further punishment, complied with Buikema's directive and removed his "Let's Go Brandon" sweatshirt.

50.     Had Buikema not ordered D.A. to remove his "Let's Go Brandon" sweatshirt, D.A. would have continued wearing it to express his opposition to President Biden.

51.     A few weeks later, D.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

52.    Ms. Bradford stopped D.A. in the school hallway and instructed him to remove his "Let's Go Brandon" sweatshirt.

53.    Bradford threatened punishment if D.A. did not remove the sweatshirt, telling him, "Take that sweatshirt off. I've told you before and won't tell you again."

54.    D.A. asked Bradford why D.A. had to remove his "Let's Go Brandon" apparel. Bradford told D.A. that the sweatshirt was "not permitted."

55.    D.A., fearing further punishment, complied with Bradford's directive and removed his "Let's Go Brandon" sweatshirt.

56.    Had Bradford not ordered D.A. to remove his "Let's Go Brandon" sweatshirt, D.A. would have continued wearing it to express his opposition to President Biden.

57.    D.A.'s "Let's Go Brandon" sweatshirt did not disrupt class, cause disturbance among students, or invade the rights of others.

58.    On May 26, 2022, X.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

59.    On May 26, 2022, Buikema pulled X.A. from class without warning and summoned X.A to his office.

60.    Buikema ordered X.A to remove his "Let's Go Brandon" sweatshirt.

61.    Buikema told X.A that the school does not allow students to wear clothing with political speech.

62.    X.A., fearing further punishment, complied with Buikema's directive and removed his sweatshirt.

9

63.     Had Buikema not ordered X.A. to remove his "Let's Go Brandon" sweatshirt, X.A. would have continued wearing it to express his opposition to President Biden.

64.     X.A.'s "Let's Go Brandon" sweatshirt did not disrupt class, cause a disturbance among students, or invade the rights of others.

65.     Fearing punishment, and in accordance with Buikema's and Bradford's orders, D.A. and X.A. have not worn "Let's Go Brandon" apparel to the School District schools since May 26, 2022.

66.     D.A. and X.A. wish to resume wearing "Let's Go Brandon" apparel to school to express their opposition to President Biden.

67.     Despite prohibiting "Let's Go Brandon" apparel, the School District permits students to wear apparel expressing other political and social messages, including but not limited to apparel expressing support for LGBTQ+ rights.

## IV.     Tri County School District's Continuing Pattern of Discrimination Against Pro-Trump and Anti-Biden Political Expression

68.     Tri County Middle School hosts an annual "field day" event for students to mark the end of the academic year and the beginning of summer recess. Field day consists of school-organized and supervised outdoor recreational activities during the school day.

69.     Tri County Middle School relaxes its dress code on field day and allows students to wear non-traditional apparel, such as wearing a flag as a cape.

70.     Tri County Middle School's field day for the 2021–2022 school year occurred on June 2, 2022.

71.     Upon information and belief, before the June 2022 field day, Tri County Middle School had not experienced material disruption, substantial disorder, or an invasion of the rights of others resulting from students wearing pro-Trump or other political apparel.

72.     Upon information and belief, before the June 2022 field day, Defendants had not received any information which would lead them to reasonably forecast a material disruption, substantial disorder, or an invasion of the rights of others if a student wore a Trump flag on field day.

73.     On field day, some students wore LGBTQ+ pride flags expressing support for LGBTQ+ rights.

74.     Another student, however, wore a Trump flag.

75.     A photograph of the Trump flag the student wore on field day is depicted here:



76.     The student wore his Trump flag for about two hours, with little to no reaction from other students.

77.     The student's flag caused no disruption, disorder, or incident, and did not invade the rights of others.

78.     But after Buikema observed the student wearing the Trump flag, Buikema ordered the student to remove it.

79.     Buikema and other School District employees did not, however, order students to remove flags containing other viewpoints.

80.     For instance, during the June 2022 field day, Buikema and other School District employees witnessed multiple students wearing pride flags expressing support for LGBTQ+ rights.

81.     But Buikema and other School District employees did not order students wearing pride flags to remove their flags.

## V.    The School District's Dress Code Invites Discriminatory Enforcement.

82.     The School District's dress code prohibits apparel which is "disruptive to the teaching and/or learning environment by calling undue attention to oneself." (Ex. A at 29; Ex. B at 24.)

83.     The School District provides parents and students no guidance regarding what constitutes apparel which "disruptive[ly]" "call[s] undue attention to oneself."

84.     Upon information and belief, the School District provides staff no guidance regarding what constitutes apparel which "disruptive[ly]" "call[s] undue attention to" a student.

85.     The lack of clarity and guidance invites subjective and discriminatory enforcement of the dress code.

86.     D.A. and X.A. wore "Let's Go Brandon" apparel to school intending to call attention to and express their opposition to President Biden.

87.     D.A. and X.A. wish to resume wearing "Let's Go Brandon" apparel to school in order to call attention to and express their opposition to President Biden.

## VI.     D.A. and X.A. Demand the School District Follow the First Amendment; the School District Refuses.

88.     On May 27, 2022, Plaintiffs D.A. and X.A., through counsel, sent the School District a cease-and-desist letter along with a document preservation demand. (Ex. C.)

89.     The letter demanded that the School District permit the students to wear "Let's Go Brandon" apparel and noted the absence of disruption caused by the apparel. (*Id.*)

90.      On June 9, 2022, the School District responded, through counsel, that "The District prohibits clothing or styles of expression that are vulgar or profane. The commonly known meaning of the slogan 'Let's Go Brandon' is intended to ridicule the President with profanity … 'Let's Go Brandon' is a transparent code for using profanity against the President." (Ex. D.)

91.     The School District did not claim that "Let's Go Brandon" sweatshirts, or political apparel more generally, create material disruption, substantial disorder, invade the rights of others, or have caused it to forecast the same.

## INJURY TO PLAINTIFFS

92.     Defendants' prohibition on "Let's Go Brandon" apparel injures D.A. and X.A. because it infringes their First Amendment right to peacefully convey a political message they believe in and wish to advocate for, including at school.

93.     D.A.'s and X.A.'s injuries are ongoing because, but for Defendants' prohibition on "Let's Go Brandon" apparel, D.A. and X.A. would wear "Let's Go Brandon" apparel to school to express their opposition to President Biden.

94.     D.A., X.A., and other Tri County Middle School and Tri County High School students are in immediate danger of direct injury from the School District's restriction on apparel which "disruptive[ly]" "call[s] undue attention to oneself" because they wish to wear politically expressive clothing to school for the purpose of drawing attention to their political messages. Plaintiffs and other students are at constant risk of discipline for wearing attire expressing a political or social message which "calls undue attention" to themselves, creating a substantial danger of chilling their core protected speech.

## CLAIMS

### FIRST CLAIM
**Violation of First Amendment (Damages)**
**Freedom of Speech**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant Buikema and Plaintiff D.A. against Defendant Bradford)**

95.     Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

14

96.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

97.    The First Amendment protects a wide range of speech, including speech that is critical of those who hold public office. *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964).

98.    Wearing clothing with a political message for the purpose of expressing that message is protected by the free speech clause of the First Amendment. *Tinker*, 393 U.S. at 514.

99.    In *Tinker*, the Court announced a rule that students retain their First Amendment rights in school, but schools may regulate student speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" or that leads school officials to reasonably forecast the same. *Id.* at 513–14.

100.    "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal quotation omitted).

101.    Therefore, in schools, "The prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible." *Tinker*, 393 U.S. at 511.

102.   D.A.'s and X.A.'s "Let's Go Brandon" sweatshirts did not create material disruption, cause substantial disorder, or invade the rights of others.

103.   Buikema engaged in impermissible viewpoint discrimination by instructing D.A. and X.A. to remove their "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages.

104.   Buikema's actions deprive D.A. and X.A. of their First Amendment right to peacefully express their political views at school.

105.   Bradford engaged in impermissible viewpoint discrimination by instructing D.A. to remove his "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages.

106.   Bradford's actions deprive D.A. of his First Amendment right to peacefully express his political views at school.

107.   The First Amendment also generally prohibits "content discrimination," which occurs when government officials regulate speech based on its subject-matter.

108.   Buikema and Bradford ordering D.A. and X.A. to remove "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes impermissible content discrimination under the First Amendment because the prohibition targets a particular subject—political candidates and figures—for unequal treatment.

109.   Prohibiting apparel referencing political candidates and figures is not narrowly tailored because it prohibits all apparel expressing support for or opposition

to political candidates and figures, no matter whether the expression is proscribable under *Tinker* and its progeny.

110.   There is no legitimate, let alone compelling state interest in prohibiting peaceful, non-disruptive support for or opposition to political candidates and figures in schools, nor is it the least restrictive means of achieving such an interest.

111.   The Supreme Court has "outlined three specific categories of student speech that schools may regulate in certain circumstances" even without a showing of material disruption under *Tinker*: "(1) 'indecent,' 'lewd,' or 'vulgar' speech uttered during a school assembly or on school grounds; (2) speech, uttered during a class trip, that promotes 'illegal drug use;' and (3) speech that others may reasonably perceive as 'bearing the imprimatur of the school,' such as that appearing in a school-sponsored newspaper." *Mahanoy*, 141 S. Ct. at 2045 (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986); *Morse v. Frederick*, 551 U.S. 393, 409 (2007); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (cleaned up)).

112.   D.A.'s and X.A.'s "Let's Go Brandon" peaceful expression does not fall within the three categories because it is not indecent, lewd, or vulgar, it does not promote illegal drug use, and the expression does not bear the imprimatur of the school.

113.   Upon information and belief, Tri County Middle School has not experienced material disruption, substantial disorder, or an invasion of the rights of others due to political signage, flags, or apparel.

114.   Upon information and belief, Tri County High School has not experienced material disruption, substantial disorder, or an invasion of the rights of others due to political signage, flags, or apparel.

115.   Using governmental authority to suppress one student's political views but allowing other students to express a different political view is an obvious constitutional violation.

116.   At all times relevant to this Complaint, Buikema and Bradford were or should have been aware that their actions were unconstitutional. No reasonable official would have censored Plaintiffs' political expression because of the viewpoint expressed.

117.   It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

118.   It is clearly established that government actors may not discriminate against speech based on the viewpoint expressed. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

119.   It is clearly established that the government cannot discriminate against political speech or between topics unless necessary to serve a compelling state interest and the action is narrowly tailored to serve that interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

120.   It is clearly established the First Amendment protects students' right to engage in political speech and expression at school so long as the expression does not

cause or threaten to cause material disruption, substantial disorder, or an invasion of the rights of others. *Tinker*, 393 U.S. at 513.

121.   It is clearly established that peaceful student expression cannot be silenced merely because those who disagree with it "may start an argument or cause a disturbance." *Id.* at 508.

122.   It is clearly established that public schools may not discriminate against students' expression based on the student's political views or affiliations. *Id.* at 511.

123.   In the alternative, it is clearly established that ambiguously lewd, vulgar, or profane speech is protected by the First Amendment if it comments on a matter of political or social concern. *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 320 (3d Cir. 2013) (en banc).

124.   By censoring Plaintiffs' political speech and expression, and discriminating against Plaintiffs based on political views, affiliations, and message-content, Defendants violated clearly established constitutional rights of which a reasonable official would have known.

125.   As a direct and proximate result of the School District's policy prohibiting "Let's Go Brandon" apparel, and Buikema's and Bradford's actions enforcing that policy, D.A. and X.A. have suffered and continue to suffer irreparable injury, including being deprived of their constitutional right to wear non-disruptive, non-vulgar politically expressive attire to school and to be free from viewpoint and content discrimination.

126.   The denial of constitutional rights is an irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

127.   Buikema's and Bradford's conduct towards Plaintiffs recklessly and callously disregarded and was indifferent to Plaintiffs' rights because they acted with the intent to suppress Plaintiffs' silent, non-disruptive, and non-profane political expression. Accordingly, punitive damages are appropriate and necessary to punish Buikema and Bradford for abridging Plaintiffs' constitutional rights and to deter similar violations in the future.

### SECOND CLAIM
*Monell* Claim for Violation of First Amendment
42 U.S.C. § 1983
(All Plaintiffs against Defendant School District)

128.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

129.   Buikema's and Bradford's actions violated D.A.'s and X.A.'s constitutional rights for the reasons stated in Claim I.

130.   Buikema and Bradford acted pursuant to an officially promulgated policy, practice, and custom by the School District to prohibit expression with the political slogan "Let's Go Brandon." (Ex. D.)

131.   In a June 9, 2022, letter, the School District confirmed that its official policy, practice, and custom is to prohibit expression containing the political slogan "Let's Go Brandon." (*Id.*)

132.   In that letter, the School District confirmed that Buikema's and Bradford's actions—prohibiting D.A. and X.A. from wearing "Let's Go Brandon" sweatshirts—followed and correctly enforced the School District's policy. (*Id.* at 1.)

133.   Because Buikema and Bradford acted pursuant to the School District's official policy, practice, and custom, the School District is liable for depriving and continuing to deprive D.A. and X.A. of their constitutional rights under 42 U.S.C. § 1983, pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

134.   The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" political expression was the moving force behind Buikema's and Bradford's infringement of D.A.'s and X.A.'s constitutional rights because Buikema and Bradford acted pursuant to that official policy, practice, and custom.

135.   As a direct and proximate result of the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" political expression, D.A. and X.A. were and continue to be deprived of their constitutional rights to freedom of speech. As a legal consequence of the School District's violation of D.A.'s and X.A.'s First Amendment rights, D.A. and X.A. are entitled to damages from the School District.

**THIRD CLAIM**
**Violation of First Amendment (Injunctive and Declaratory Relief)**
**Freedom of Speech and Expression**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

136.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

137.   The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes an unlawful abridgment of the First Amendment right to freedom of speech as explained in Claim I.

138.   The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes an ongoing abridgement of D.A.'s and X.A.'s First Amendment free speech rights as explained in Claim I.

139.   The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes unlawful viewpoint and content discrimination under the First Amendment for the reasons stated in Claim I.

140.   D.A. and X.A. are entitled to a declaration under 28 U.S.C. § 2201 that the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes unlawful suppression of D.A.'s and X.A.'s First Amendment right to freedom of speech for the reasons stated in Claim I.

141.   D.A. and X.A. are entitled to a declaration under 28 U.S.C. § 2201 that the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes unlawful viewpoint and content discrimination under the First Amendment for the reasons stated in Claim I.

142.   As a direct and proximate result of the School District's policies and Buikema's and Bradford's actions, Plaintiffs have suffered and continue to suffer irreparable injury, including being deprived of their constitutional right to free

speech. Plaintiffs are entitled to prospective injunctive relief against the School District.

143.   But for the School District's policy prohibiting "Let's Go Brandon" apparel, D.A. and X.A. would wear "Let's Go Brandon" apparel to school.

144.   Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights.

145.   Without declaratory and injunctive relief, the School District's suppression of Plaintiffs' First Amendment right to express their political views will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**FOURTH CLAIM**
**Violation of First and Fourteenth Amendments (Injunctive and**
**Declaratory Relief)**
**Vagueness**
**42 U.S.C. §1983**
**(All Plaintiffs against Defendant School District)**

146.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

147.   The First and Fourteenth Amendments to the Constitution prohibit restrictions on speech which fail to provide members of the public fair notice of prohibited conduct.

148.   A government policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

149.   The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is facially vague because it fails to provide parents and students sufficient information to know what is restricted or what is required of them so that they may act accordingly.

150.   The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is facially vague because it fails to provide sufficient precision and guidance so that those enforcing the policy do not act in an arbitrary or discriminatory way.

151.   The School District's policy, which fails to provide parents and students sufficient information to conform conduct to the requirements of the law, chills Plaintiffs and other students from engaging in protected First Amendment speech, because students wear apparel with political and social messages for the purpose of calling attention to those messages.

152.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is unlawfully vague and therefore violates the First and Fourteenth Amendments.

153.   Without declaratory and injunctive relief against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself," the School District's suppression and chill of

Plaintiffs' freedom of speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**FIFTH CLAIM**
**Violation of First Amendment (Injunctive and Declaratory Relief)**
**Overbreadth**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

154.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

155.   The First Amendment to the Constitution prohibits regulations that regulate substantially more speech than the Constitution allows to be regulated.

156.   The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is substantially overbroad because it reaches a significant amount of protected First Amendment speech and expressive conduct, including peacefully wearing politically expressive attire (like a black armband, "Let's Go Brandon" sweatshirt, or "I like Ike" button) in a manner which does not cause material disruption, substantial disorder, or an invasion of the rights of others.

157.   The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" reaches a substantial amount of protected First Amendment expression relative to any legitimate sweep.

158.   To the extent the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" has any constitutionally permissible application in terms of maintaining school

discipline, its reach is so broad that it chills a substantial amount of constitutionally protected speech, including, for example, peacefully wearing politically expressive apparel in a manner which does not cause material disruption, substantial disorder, or an invasion of the rights of others

159.    The reach of the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" serves only to chill Plaintiffs and other students from engaging in the full array of protected First Amendment expression in schools.

160.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the School District's prohibition on apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is substantially and unlawfully overbroad on its face and therefore violates the First Amendment.

161.    Without declaratory and injunctive relief against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself," the School District's suppression and chill of Plaintiffs' and other students' freedom of speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court enter judgment against Defendants and issue the following forms of relief:

A.    Enter a permanent injunction enjoining the School District from enforcing a categorical ban on "Let's Go Brandon" apparel;

B.      Enter a permanent injunction against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself;"

C.      Declare that the School District's ban on "Let's Go Brandon" apparel violates the First Amendment;

D.      Declare that the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" violates the First and Fourteenth Amendments;

E.      Award Plaintiffs compensatory, nominal, and punitive damages;

F.      Award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988;

G.      Award Plaintiffs their costs; and

H.      Award such other relief as the Court deems appropriate.

Dated: April 25, 2023              Respectfully submitted,

By: /s/ Conor T. Fitzpatrick
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
        EXPRESSION
    510 Walnut St., Ste. 1250
    Philadelphia, PA 19106
    (215) 717-3473
    conor.fitzpatrick@thefire.org
    harrison.rosenthal@thefire.org

    *Counsel for Plaintiffs*

## <u>DEMAND FOR JURY TRIAL</u>

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 25, 2023            Respectfully submitted,

By: <u>/s/ Conor T. Fitzpatrick</u>
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
      EXPRESSION
    510 Walnut St., Ste. 1250
    Philadelphia, PA 19106
    (215) 717-3473
    conor.fitzpatrick@thefire.org
    harrison.rosenthal@thefire.org

    *Counsel for Plaintiffs*