UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.A., a minor, by and through his
mother B.A.; and X.A., a minor, by and
through his mother B.A,

            Plaintiffs,                 Judge Paul L. Maloney
                                        Magistrate Judge Sally J. Berens

v                                        No. 23-423

TRI COUNTY AREA SCHOOLS, ANDREW
BUIKEMA and WENDY BRADFORD,

            Defendants.
_____/

| | |
|---|---|
| Conor T. Fitzpatrick (P78981) | Timothy J. Mullins (P28021) |
| Harrison M. Rosenthal (Pa. Bar. No. 332452) | John L. Miller (P71913) |
| Foundation for Individual Rights and | Annabel F. Shea (P83750) |
|   Expression | Giarmarco, Mullins & Horton, P.C. |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |
| 510 Walnut St., Ste. 1250 | 101 W. Big Beaver Road, 10th Floor |
| Philadelphia, PA 19106 | Troy, MI 48084-5280 |
| (215) 717-3473 | (248) 457-7020 |
| conor.fitzpatrick@thefire.org | tmullins@gmhlaw.com |
| harrison.rosenthal@thefire.org | jmiller@gmhlaw.com |
| | ashea@gmhlaw.com |

## ANSWER TO PLAINTIFFS' COMPLAINT

Defendants TRI COUNTY AREA SCHOOLS, ANDREW BUIKEMA and WENDY

BRADFORD, by and through their counsel, GIARMARCO, MULLINS & HORTON, P.C.,

answer Plaintiffs' Complaint as follows:

## INTRODUCTION

1.      This case is about protecting the role of America's public schools as "nurseries of

democracy." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021). Our schools train the

next generation to live in a country where their neighbors and coworkers might not think, pray, or

vote the same way they do.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

2.     That pluralistic democracy is made possible by the First Amendment, which protects our right to speak our minds without government punishment. And just as the First Amendment bars viewpoint discrimination in townhalls and public squares, so too does it bar viewpoint discrimination against public school students.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for they are editorial conclusions of law, rather than allegations of fact, and in and of themselves present an entirely incomplete observation on the legal subject matter. As the allegations relate entirely to conclusions of law, rather than allegations of fact, they are inaccurate, incorrect, incomplete and will be left to Plaintiffs' proofs thereon with a final determination by the Court.**

3.     But Defendant Tri County Area Schools (the "School District") and its employees are censoring students who try to express support for former President Donald Trump or opposition to President Joe Biden.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

4.     For instance, during the Tri County Middle School "Field Day" in June 2022, School District employees permitted students to wear LGBTQ+ pride flags but ordered students to remove Trump flags.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

2

5.      What is more, the School District prohibits students, including Plaintiffs D.A. and X.A., from wearing apparel containing "Let's Go Brandon," a non-profane and well-known anti-Joe Biden political slogan, even though the School District allows students to wear apparel expressing other views.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

6.      The Supreme Court clearly established more than 50 years ago that the First Amendment protects peaceful, non-disruptive political speech at school. America's students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Plaintiffs bring this suit to ensure that America's students remain free to use their Constitutional rights at school, not just learn about them.

**ANSWER: Defendants neither admit nor deny the allegations contained therein as they are incomplete editorializations on the law applicable to the First Amendment, rather than allegations of fact, and, as such, incomplete, inaccurate, incorrect conclusions of law. Therefore, Plaintiffs are left to their proofs thereon with a final determination by the Court as to whether the appropriate law is applicable to the case herein.**

<u>**THE PARTIES**</u>

*Plaintiffs*

7.      Plaintiff D.A. is a seventh-grade student at Tri County Middle School. At all times relevant to this Complaint, D.A. was a student in Tri County Area Schools. D.A. lives with his mother, B.A., in Newaygo County, Michigan. B.A. brings this action on behalf of her minor son, D.A.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of**

**knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

8.      D.A. opposes President Joe Biden and wants to wear apparel with the anti-Biden political slogan "Let's Go Brandon" to school. But the School District prohibits students from wearing apparel expressing the slogan and School District employees instructed D.A. to remove "Let's Go Brandon" apparel.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

9.      Plaintiff X.A. is a freshman at Tri County High School. At all times relevant to this Complaint, X.A. was a student in Tri County Area Schools. X.A. lives with his mother, B.A., in Newaygo County, Michigan. B.A. brings this action on behalf of her minor son, X.A.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

10.      X.A. opposes President Biden and wants to wear apparel with the anti-Biden slogan "Let's Go Brandon" to school. But the School District prohibits students from wearing apparel expressing the slogan and School District employees instructed D.A. to remove "Let's Go Brandon" apparel.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

11.      D.A. and X.A. are suing because Defendants are violating the First Amendment by censoring the students' peaceful, non-disruptive political expression in school.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

*Defendants*

12.     Defendant Tri County Area Schools is a school district headquartered in Howard City, Michigan. The School District includes Tri County High School, a public high school located in Howard City, Michigan (grades 9–12), Tri County Middle School, a public middle school in Howard City, Michigan (grades 6–8), two elementary schools, and a preschool.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs. Defendants affirmatively aver that Tri County Area Schools is a Michigan Public School District performing a governmental function in Montcalm County, Michigan, to wit, providing a public education to students within the district and, as such, the School is a governmental agency and is immune from suit herein.**

13.     Defendant Andrew Buikema is employed by the School District as an Assistant Principal at Tri County Middle School, and, in that role, enforces School District policy. Buikema ordered D.A. and X.A. to remove "Let's Go Brandon" apparel despite allowing students to wear apparel with other political and social messages.

**ANSWER: Defendants admit that Andrew Buikema has been employed in various positions with the School District from time to time. Defendants deny the remaining allegations contained therein for the reason that they are untrue.**

14.     At all times relevant to this Complaint, Buikema acted under color of state law as the Assistant Principal of Tri County Middle School.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs thereon for a final determination as to this legal conclusion to be made by the Court.**

15.    Defendant Wendy Bradford is employed by the School District as a teacher at Tri County Middle School, and, in that role, enforces School District policy. Bradford ordered D.A. to remove "Let's Go Brandon" apparel despite allowing students to wear apparel with other political and social messages.

**ANSWER: Defendants admit that Wendy Bradford has been employed in various positions with the School District from time to time. Defendants deny the remaining allegations contained therein for the reason that they are untrue.**

16.    At all times relevant to this Complaint, Bradford acted under color of state law as a teacher at Tri County Middle School.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs thereon for a final determination as to this legal conclusion to be made by the Court.**

## JURISDICTION AND VENUE

17.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction for civil rights violations under 28 U.S.C. § 1343 because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

18.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this district and all Defendants reside in Michigan.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore,**

leave Plaintiffs to their proofs thereon with a final determination to be made by the Court.

19.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

## FACTUAL ALLEGATIONS

I.     The Tri County Area Schools Student Handbook

20.     Tri County High School and Tri County Middle School distribute a Student Handbook which includes a dress code policy.

**ANSWER: D Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

21.     The dress code in place for both schools during the 2021–2022 and 2022–2023 school years provides that:

> Students and parents have the right to determine a student's dress, except when the school administration determines a student's dress is in conflict with state policy, is a danger to the students' health and safety, is obscene, is disruptive to the teaching and/or learning environment by calling undue attention to oneself. The dress code may be enforced by any staff member.

(Ex. A: High School Handbook, at 29; Ex. B: Middle School Handbook, at 24.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that the allegations are incomplete statements and the source thereof is not specified. Therefore, Plaintiffs are left to their proofs thereon.**

22.     The dress code prohibits clothing "with messages or illustrations that are lewd, indecent, vulgar, or profane, or that advertise any product or service not permitted by law to

7

minors." (Ex. A at 29; Ex. B at 24.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

23.     The Handbook guarantees nondiscrimination "on the basis of race, color, sex, religion, creed, [or] political belief." (Ex. A at 11; Ex. B. at 7.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

24.     The Handbook provides that dress code violations result in discipline including notifying parents, required clothing change, and, after multiple infractions, suspension. (Ex. A at 24; Ex. B at 18.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

II.     "Let's Go Brandon" is a Popular, Non-Profane Anti-Biden Political Slogan.

25.     "Let's Go Brandon" is a non-profane, non-vulgar political slogan used to express disapproval of President Joe Biden.

**ANSWER: Defendants deny the allegations contained therein for the reason that the student body has repeatedly expressed their knowledge of the slogan, which Plaintiffs indicate is popular, and which is popularly understood to be a statement of "Fuck Joe Biden." As a result, Defendants deny Plaintiffs' allegation that said statements are not profane and non-vulgar.**

26.     D.A. and X.A. oppose President Biden and own sweatshirts with the slogan "Let's Go Brandon."

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

27.     A photograph of the sweatshirt is depicted here:



.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

28.     D.A. and X.A. wear their "Let's Go Brandon" sweatshirts to express their opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

29.     The political slogan "Let's Go Brandon" originated at an October 2021 NASCAR Xfinity Series race in Talladega, Alabama. After the race, won by Brandon Brown, members of the crowd chanted "Fuck Joe Biden" during Brown's post-race interview. A television commentator remarked that the fans were shouting "Let's go, Brandon!"

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

30.     The slogan "Let's Go Brandon" conveys the same opposition to President Biden, sanitized to express the sentiment without using profanity or vulgarity.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

31.     "Let's Go Brandon" is not lewd, profane, indecent, vulgar, or obscene.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

32.     The slogan "Let's Go Brandon" does not contain sexually explicit language or connotation.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

33.     Since October 2021, the slogan "Let's Go Brandon" gained widespread use by members of the public and elected officials as a form of political commentary and criticism of President Biden. The slogan has appeared on broadcast media and as a chant at political rallies, become a massive social media trend, and appears on T-shirts and bumper stickers.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

34.     On October 21, 2021, Representative William J. Posey, who represents Florida's Eighth Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 167 Cong. Rec. 5776 (2021).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

35.     Representative Posey was not censured, ruled out of order, or disciplined for using

the slogan.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

36.     On October 26, 2021, Representative Mary E. Miller, who represents Illinois' Fifteenth Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 167 Cong. Rec. 5880 (2021).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

37.     Representative Miller was not censured, ruled out of order, or disciplined for using the slogan.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

38.     On June 7, 2022, Representative Douglas L. LaMalfa, who represents California's First Congressional District, used the slogan "Let's Go Brandon" during a speech in the United States House of Representatives. 168 Cong. Rec. 5240 (2021).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

39.     Representative LaMalfa was not censured, ruled out of order, or disciplined for using the slogan.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

40.     In October 2021, Representative Jeffrey D. Duncan, who represents South Carolina's Third Congressional District, wore a facemask adorned with the slogan "Let's Go

Brandon" on the floor of the United States House of Representatives.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

41.     Representative Duncan was not censured, ruled out of order, or disciplined for wearing the mask.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

42.     President Biden's supporters repurposed the "Let's Go Brandon" slogan in mid-2022, as "Dark Brandon"—a pro-Biden internet meme stylizing the President's likeness with heavy contrast or decreased background light to portray him as a superhero protagonist.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

III.     Buikema and Bradford Ordered D.A. and X.A. to Remove "Let's Go Brandon" Apparel.

43.     D.A. and X.A. wish to express their opposition to President Biden by wearing their "Let's Go Brandon" sweatshirts to school.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

44.     Upon information and belief, before February 2022 and continuing through the present, the School District has not experienced material disruption, substantial disorder, or invasions of the rights of others from Plaintiffs or other students wearing "Let's Go Brandon" or other political apparel.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

45.     Upon information and belief, before February 2022 and continuing through the

present, Defendants have not received any information which would lead them to reasonably forecast a material disruption, substantial disorder, or invasions of the rights of others if students wore "Let's Go Brandon" or other political apparel.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

46.     On or around February 2022, D.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

47.     Buikema stopped D.A. in the hallway between classes and instructed D.A. to remove his "Let's Go Brandon" sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

48.     Buikema told D.A. his "Let's Go Brandon" sweatshirt was equivalent to "the f-word."

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

49.     D.A., fearing further punishment, complied with Buikema's directive and removed his "Let's Go Brandon" sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

50.     Had Buikema not ordered D.A. to remove his "Let's Go Brandon" sweatshirt, D.A. would have continued wearing it to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

51.     A few weeks later, D.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

52.     Ms. Bradford stopped D.A. in the school hallway and instructed him to remove his "Let's Go Brandon" sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

53.     Bradford threatened punishment if D.A. did not remove the sweatshirt, telling him, "Take that sweatshirt off. I've told you before and won't tell you again."

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

54.     D.A. asked Bradford why D.A. had to remove his "Let's Go Brandon" apparel. Bradford told D.A. that the sweatshirt was "not permitted."

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

55.     D.A., fearing further punishment, complied with Bradford's directive and removed his "Let's Go Brandon" sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

56.     Had Bradford not ordered D.A. to remove his "Let's Go Brandon" sweatshirt, D.A.

would have continued wearing it to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

57.     D.A.'s "Let's Go Brandon" sweatshirt did not disrupt class, cause disturbance among students, or invade the rights of others.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

58.     On May 26, 2022, X.A. wore his "Let's Go Brandon" sweatshirt to Tri County Middle School to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

59.     On May 26, 2022, Buikema pulled X.A. from class without warning and summoned X.A to his office.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

60.     Buikema ordered X.A to remove his "Let's Go Brandon" sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

61.     Buikema told X.A that the school does not allow students to wear clothing with political speech.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

62.     X.A., fearing further punishment, complied with Buikema's directive and removed

his sweatshirt.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

63. Had Buikema not ordered X.A. to remove his "Let's Go Brandon" sweatshirt, X.A. would have continued wearing it to express his opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

64. X.A.'s "Let's Go Brandon" sweatshirt did not disrupt class, cause a disturbance among students, or invade the rights of others.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

65. Fearing punishment, and in accordance with Buikema's and Bradford's orders, D.A. and X.A. have not worn "Let's Go Brandon" apparel to the School District schools since May 26, 2022.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

66. D.A. and X.A. wish to resume wearing "Let's Go Brandon" apparel to school to express their opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

67. Despite prohibiting "Let's Go Brandon" apparel, the School District permits students to wear apparel expressing other political and social messages, including but not limited to apparel expressing support for LGBTQ+ rights.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

IV.     Tri County School District's Continuing Pattern of Discrimination Against Pro-Trump and Anti-Biden Political Expression

68.     Tri County Middle School hosts an annual "field day" event for students to mark the end of the academic year and the beginning of summer recess. Field day consists of school-organized and supervised outdoor recreational activities during the school day.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

69.     Tri County Middle School relaxes its dress code on field day and allows students to wear non-traditional apparel, such as wearing a flag as a cape.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

70.     Tri County Middle School's field day for the 2021–2022 school year occurred on June 2, 2022.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

71.     Upon information and belief, before the June 2022 field day, Tri County Middle School had not experienced material disruption, substantial disorder, or an invasion of the rights of others resulting from students wearing pro-Trump or other political apparel.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

72.     Upon information and belief, before the June 2022 field day, Defendants had not received any information which would lead them to reasonably forecast a material disruption,

17

substantial disorder, or an invasion of the rights of others if a student wore a Trump flag on field day.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

73.     On field day, some students wore LGBTQ+ pride flags expressing support for LGBTQ+ rights.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

74.     Another student, however, wore a Trump flag.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

75.     A photograph of the Trump flag the student wore on field day is depicted here:



**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

76.     The student wore his Trump flag for about two hours, with little to no reaction from other students.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of**

**knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

77.     The student's flag caused no disruption, disorder, or incident, and did not invade the rights of others.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

78.     But after Buikema observed the student wearing the Trump flag, Buikema ordered the student to remove it.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

79.     Buikema and other School District employees did not, however, order students to remove flags containing other viewpoints.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

80.     For instance, during the June 2022 field day, Buikema and other School District employees witnessed multiple students wearing pride flags expressing support for LGBTQ+ rights.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

81.     But Buikema and other School District employees did not order students wearing pride flags to remove their flags.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

V.     The School District's Dress Code Invites Discriminatory Enforcement.

82.     The School District's dress code prohibits apparel which is "disruptive to the teaching and/or learning environment by calling undue attention to oneself." (Ex. A at 29; Ex. B

19

at 24.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein as they do not accurately reflect a complete statement of the school's dress code or associated policies and, therefore, leave Plaintiffs to their proofs.**

83.     The School District provides parents and students no guidance regarding what constitutes apparel which "disruptive[ly]" "call[s] undue attention to oneself."

**ANSWER: Defendants neither admit nor deny the allegations contained therein as they do not accurately reflect a complete statement of the school's dress code or associated policies and, therefore, Plaintiffs are left to their proofs thereon.**

84.     Upon information and belief, the School District provides staff no guidance regarding what constitutes apparel which "disruptive[ly]" "call[s] undue attention to" a student.

**ANSWER: Defendants neither admit nor deny the allegations contained therein as they do not accurately reflect a complete statement of the school's dress code or associated policies and, therefore, Plaintiffs are left to their proofs thereon.**

85.     The lack of clarity and guidance invites subjective and discriminatory enforcement of the dress code.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

86.     D.A. and X.A. wore "Let's Go Brandon" apparel to school intending to call attention to and express their opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

87.     D.A. and X.A. wish to resume wearing "Let's Go Brandon" apparel to school in

order to call attention to and express their opposition to President Biden.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

VI.   D.A. and X.A. Demand the School District Follow the First Amendment; the School District Refuses.

88.   On May 27, 2022, Plaintiffs D.A. and X.A., through counsel, sent the School District a cease-and-desist letter along with a document preservation demand. (Ex. C.)

**ANSWER: Defendants admit the allegations contained therein.**

89.   The letter demanded that the School District permit the students to wear "Let's Go Brandon" apparel and noted the absence of disruption caused by the apparel. (*Id.*)

**ANSWER: Defendants admit that the referenced correspondence was received by the School District. However, the remaining allegations contained therein are not a complete rendition of the correspondence and Plaintiffs are, therefore, left to their proofs thereon.**

90.   On June 9, 2022, the School District responded, through counsel, that "The District prohibits clothing or styles of expression that are vulgar or profane. The commonly known meaning of the slogan 'Let's Go Brandon' is intended to ridicule the President with profanity … 'Let's Go Brandon' is a transparent code for using profanity against the President." (Ex. D.)

**ANSWER: Defendants admit that correspondence was forwarded to Plaintiffs' counsel; however, as alleged in the Complaint, the substance of the correspondence is edited and not fully and accurately set forth. Defendants neither admit nor deny the remaining allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

91.   The School District did not claim that "Let's Go Brandon" sweatshirts, or political apparel more generally, create material disruption, substantial disorder, invade the rights of others,

or have caused it to forecast the same.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

**INJURY TO PLAINTIFFS**

92.     Defendants' prohibition on "Let's Go Brandon" apparel injures D.A. and X.A. because it infringes their First Amendment right to peacefully convey a political message they believe in and wish to advocate for, including at school.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

93.     D.A.'s and X.A.'s injuries are ongoing because, but for Defendants' prohibition on "Let's Go Brandon" apparel, D.A. and X.A. would wear "Let's Go Brandon" apparel to school to express their opposition to President Biden.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

94.     D.A., X.A., and other Tri County Middle School and Tri County High School students are in immediate danger of direct injury from the School District's restriction on apparel which "disruptive[ly]" "call[s] undue attention to oneself" because they wish to wear politically expressive clothing to school for the purpose of drawing attention to their political messages. Plaintiffs and other students are at constant risk of discipline for wearing attire expressing a political or social message which "calls undue attention" to themselves, creating a substantial danger of chilling their core protected speech.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

## CLAIMS

**FIRST CLAIM**
**Violation of First Amendment (Damages)**
**Freedom of Speech**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant Buikema and Plaintiff D.A. against Defendant Bradford)**

95.     Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 94 inclusive, as if fully set forth herein.**

96.     The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, inaccurate or untrue statements of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.**

97.     The First Amendment protects a wide range of speech, including speech that is critical of those who hold public office. *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, inaccurate or untrue statements of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.**

98.     Wearing clothing with a political message for the purpose of expressing that message is protected by the free speech clause of the First Amendment. *Tinker*, 393 U.S. at 514.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the**

**reason that they constitute incomplete, inaccurate or untrue statements of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.**

99. In *Tinker*, the Court announced a rule that students retain their First Amendment rights in school, but schools may regulate student speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" or that leads school officials to reasonably forecast the same. *Id.* at 513–14.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, inaccurate or untrue statements of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.**

100. "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal quotation omitted).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, inaccurate or untrue statements of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.**

101. Therefore, in schools, "The prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible." *Tinker*, 393 U.S. at 511.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, inaccurate or untrue statements of law, rather than**

24

allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination by the Court as to the appropriate law to be applied to the case in question.

102.     D.A.'s and X.A.'s "Let's Go Brandon" sweatshirts did not create material disruption, cause substantial disorder, or invade the rights of others.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

103.     Buikema engaged in impermissible viewpoint discrimination by instructing D.A. and X.A. to remove their "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

104.     Buikema's actions deprive D.A. and X.A. of their First Amendment right to peacefully express their political views at school

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

105.     Bradford engaged in impermissible viewpoint discrimination by instructing D.A. to remove his "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

106.     Bradford's actions deprive D.A. of his First Amendment right to peacefully express his political views at school.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are**

untrue.

107. The First Amendment also generally prohibits "content discrimination," which occurs when government officials regulate speech based on its subject-matter.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

108. Buikema and Bradford ordering D.A. and X.A. to remove "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes impermissible content discrimination under the First Amendment because the prohibition targets a particular subject—political candidates and figures—for unequal treatment.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

109. Prohibiting apparel referencing political candidates and figures is not narrowly tailored because it prohibits all apparel expressing support for or opposition to political candidates and figures, no matter whether the expression is proscribable under *Tinker* and its progeny.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

110. There is no legitimate, let alone compelling state interest in prohibiting peaceful, non-disruptive support for or opposition to political candidates and figures in schools, nor is it the least restrictive means of achieving such an interest.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather**

than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.

111. The Supreme Court has "outlined three specific categories of student speech that schools may regulate in certain circumstances" even without a showing of material disruption under *Tinker*: "(1) 'indecent,' 'lewd,' or 'vulgar' speech uttered during a school assembly or on school grounds; (2) speech, uttered during a class trip, that promotes 'illegal drug use;' and (3) speech that others may reasonably perceive as 'bearing the imprimatur of the school,' such as that appearing in a school-sponsored newspaper." *Mahanoy*, 141 S. Ct. at 2045 (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986); *Morse v. Frederick*, 551 U.S. 393, 409 (2007); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (cleaned up)).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

112. D.A.'s and X.A.'s "Let's Go Brandon" peaceful expression does not fall within the three categories because it is not indecent, lewd, or vulgar, it does not promote illegal drug use, and the expression does not bear the imprimatur of the school.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

113. Upon information and belief, Tri County Middle School has not experienced material disruption, substantial disorder, or an invasion of the rights of others due to political signage, flags, or apparel.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are**

untrue.

114.    Upon information and belief, Tri County High School has not experienced material disruption, substantial disorder, or an invasion of the rights of others due to political signage, flags, or apparel.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

115.    Using governmental authority to suppress one student's political views but allowing other students to express a different political view is an obvious constitutional violation.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

116.    At all times relevant to this Complaint, Buikema and Bradford were or should have been aware that their actions were unconstitutional. No reasonable official would have censored Plaintiffs' political expression because of the viewpoint expressed.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

117.    It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

118.    It is clearly established that government actors may not discriminate against speech

28

based on the viewpoint expressed. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

119.    It is clearly established that the government cannot discriminate against political speech or between topics unless necessary to serve a compelling state interest and the action is narrowly tailored to serve that interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

120.    It is clearly established the First Amendment protects students' right to engage in political speech and expression at school so long as the expression does not cause or threaten to cause material disruption, substantial disorder, or an invasion of the rights of others. *Tinker*, 393 U.S. at 513.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

121.    It is clearly established that peaceful student expression cannot be silenced merely because those who disagree with it "may start an argument or cause a disturbance." *Id.* at 508.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

122. It is clearly established that public schools may not discriminate against students' expression based on the student's political views or affiliations. *Id.* at 511.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

123. In the alternative, it is clearly established that ambiguously lewd, vulgar, or profane speech is protected by the First Amendment if it comments on a matter of political or social concern. *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 320 (3d Cir. 2013) (en banc).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

124. By censoring Plaintiffs' political speech and expression, and discriminating against Plaintiffs based on political views, affiliations, and message-content, Defendants violated clearly established constitutional rights of which a reasonable official would have known.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

125. As a direct and proximate result of the School District's policy prohibiting "Let's

Go Brandon" apparel, and Buikema's and Bradford's actions enforcing that policy, D.A. and X.A. have suffered and continue to suffer irreparable injury, including being deprived of their constitutional right to wear non-disruptive, non-vulgar politically expressive attire to school and to be free from viewpoint and content discrimination.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

126.    The denial of constitutional rights is an irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

127.    Buikema's and Bradford's conduct towards Plaintiffs recklessly and callously disregarded and was indifferent to Plaintiffs' rights because they acted with the intent to suppress Plaintiffs' silent, non-disruptive, and non-profane political expression. Accordingly, punitive damages are appropriate and necessary to punish Buikema and Bradford for abridging Plaintiffs' constitutional rights and to deter similar violations in the future.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

**SECOND CLAIM**
***Monell* Claim for Violation of First Amendment**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

128.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants hereby incorporate by reference its responses contained in paragraphs 1 through 127 inclusive, as if fully set forth herein.**

129.    Buikema's and Bradford's actions violated D.A.'s and X.A.'s constitutional rights for the reasons stated in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

130.    Buikema and Bradford acted pursuant to an officially promulgated policy, practice, and custom by the School District to prohibit expression with the political slogan "Let's Go Brandon." (Ex. D.)

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

131.    In a June 9, 2022, letter, the School District confirmed that its official policy, practice, and custom is to prohibit expression containing the political slogan "Let's Go Brandon." (*Id.*)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

132.    In that letter, the School District confirmed that Buikema's and Bradford's actions—prohibiting D.A. and X.A. from wearing "Let's Go Brandon" sweatshirts—followed and correctly enforced the School District's policy. (*Id.* at 1.)

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather**

than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.

133.    Because Buikema and Bradford acted pursuant to the School District's official policy, practice, and custom, the School District is liable for depriving and continuing to deprive D.A. and X.A. of their constitutional rights under 42 U.S.C. § 1983, pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

134.    The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" political expression was the moving force behind Buikema's and Bradford's infringement of D.A.'s and X.A.'s constitutional rights because Buikema and Bradford acted pursuant to that official policy, practice, and custom.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

135.    As a direct and proximate result of the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" political expression, D.A. and X.A. were and continue to be deprived of their constitutional rights to freedom of speech. As a legal consequence of the School District's violation of D.A.'s and X.A.'s First Amendment rights, D.A. and X.A. are entitled to damages from the School District.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

**THIRD CLAIM**
**Violation of First Amendment (Injunctive and Declaratory Relief)**
**Freedom of Speech and Expression**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

136.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants hereby incorporates by reference their responses contained in paragraphs 1 through 135 inclusive, as if fully set forth herein.**

137.    The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes an unlawful abridgment of the First Amendment right to freedom of speech as explained in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

138.    The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes an ongoing abridgement of D.A.'s and X.A.'s First Amendment free speech rights as explained in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

139.    The School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes unlawful viewpoint and content discrimination under the First Amendment for the reasons stated in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

140.     D.A. and X.A. are entitled to a declaration under 28 U.S.C. § 2201 that the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel constitutes unlawful suppression of D.A.'s and X.A.'s First Amendment right to freedom of speech for the reasons stated in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

141.     D.A. and X.A. are entitled to a declaration under 28 U.S.C. § 2201 that the School District's policy, practice, and custom of prohibiting "Let's Go Brandon" apparel while allowing students to wear apparel with other political and social messages constitutes unlawful viewpoint and content discrimination under the First Amendment for the reasons stated in Claim I.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

142.     As a direct and proximate result of the School District's policies and Buikema's and Bradford's actions, Plaintiffs have suffered and continue to suffer irreparable injury, including being deprived of their constitutional right to free speech. Plaintiffs are entitled to prospective injunctive relief against the School District.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

143.     But for the School District's policy prohibiting "Let's Go Brandon" apparel, D.A. and X.A. would wear "Let's Go Brandon" apparel to school.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiffs to their proofs.**

144.     Plaintiffs have no adequate legal, administrative, or other remedy by which to

prevent or minimize the continuing irreparable harm to their First Amendment rights.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

145. Without declaratory and injunctive relief, the School District's suppression of Plaintiffs' First Amendment right to express their political views will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

**FOURTH CLAIM**
**Violation of First and Fourteenth Amendments (Injunctive and Declaratory Relief)**
**Vagueness**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

146. Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 145 inclusive, as if fully set forth herein.**

147. The First and Fourteenth Amendments to the Constitution prohibit restrictions on speech which fail to provide members of the public fair notice of prohibited conduct.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

148. A government policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final determination of the applicable law in this matter to be made by the Court.**

149.    The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is facially vague because it fails to provide parents and students sufficient information to know what is restricted or what is required of them so that they may act accordingly.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

150.    The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is facially vague because it fails to provide sufficient precision and guidance so that those enforcing the policy do not act in an arbitrary or discriminatory way.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

151.    The School District's policy, which fails to provide parents and students sufficient information to conform conduct to the requirements of the law, chills Plaintiffs and other students from engaging in protected First Amendment speech, because students wear apparel with political and social messages for the purpose of calling attention to those messages.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

152.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the School

District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is unlawfully vague and therefore violates the First and Fourteenth Amendments.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

153.   Without declaratory and injunctive relief against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself," the School District's suppression and chill of Plaintiffs' freedom of speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

**FIFTH CLAIM**
**Violation of First Amendment (Injunctive and Declaratory Relief)**
**Overbreadth**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant School District)**

154.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 153 inclusive, as if fully set forth herein.**

155.   The First Amendment to the Constitution prohibits regulations that regulate substantially more speech than the Constitution allows to be regulated.

**ANSWER: Defendants neither admit nor deny the allegations contained therein for the reason that they constitute incomplete, incorrect or inapplicable conclusions of law, rather than allegations of fact, and, therefore, Plaintiffs are left to their proofs thereon for a final**

determination of the applicable law in this matter to be made by the Court.

156.    The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is substantially overbroad because it reaches a significant amount of protected First Amendment speech and expressive conduct, including peacefully wearing politically expressive attire (like a black armband, "Let's Go Brandon" sweatshirt, or "I like Ike" button) in a manner which does not cause material disruption, substantial disorder, or an invasion of the rights of others.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

157.    The School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" reaches a substantial amount of protected First Amendment expression relative to any legitimate sweep.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

158.    To the extent the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" has any constitutionally permissible application in terms of maintaining school discipline, its reach is so broad that it chills a substantial amount of constitutionally protected speech, including, for example, peacefully wearing politically expressive apparel in a manner which does not cause material disruption, substantial disorder, or an invasion of the rights of others

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

159.    The reach of the School District's policy prohibiting apparel "disruptive to the

teaching and/or learning environment by calling undue attention to oneself" serves only to chill Plaintiffs and other students from engaging in the full array of protected First Amendment expression in schools.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

160.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the School District's prohibition on apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself" is substantially and unlawfully overbroad on its face and therefore violates the First Amendment.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

161.    Without declaratory and injunctive relief against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself," the School District's suppression and chill of Plaintiffs' and other students' freedom of speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**ANSWER: Defendants deny the allegations contained therein for the reason that they are untrue.**

## <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request that the Court enter judgment against Defendants and issue the following forms of relief:

A.    Enter a permanent injunction enjoining the School District from enforcing a categorical ban on "Let's Go Brandon" apparel;

B.    Enter a permanent injunction against the School District's policy prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to

40

oneself;"

C.      Declare that the School District's ban on "Let's Go Brandon" apparel violates the First

        Amendment;

D.      Declare that the School District's policy prohibiting apparel "disruptive to the teaching

        and/or learning environment by calling undue attention to oneself" violates the First and

        Fourteenth Amendments;

E.      Award Plaintiffs compensatory, nominal, and punitive damages;

F.      Award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988;

G.      Award Plaintiffs their costs; and

H.      Award such other relief as the Court deems appropriate.

        WHEREFORE, Defendants, TRI COUNTY AREA SCHOOLS, ANDREW BUIKEMA

and WENDY BRADFORD, respectfully requests that this Honorable Court enter an order of no

cause of action as to Defendants, together with costs and attorney fees so wrongfully sustained.

                                    /s/TIMOTHY J. MULLINS
                                    GIARMARCO, MULLINS & HORTON, PC
                                    Attorney for Defendants
DATED: June 23, 2023

## AFFIRMATIVE DEFENSES

        Defendants, TRI COUNTY AREA SCHOOLS, ANDREW BUIKEMA and WENDY

BRADFORD, by and through their attorneys, GIARMARCO, MULLINS & HORTON, P.C., state

their Affirmative Defenses as follows:

        1.      Plaintiffs have failed to state a claim or cause of action against these Defendants as

to which relief can be granted as a matter of fact and/or law.

        2.      Defendants will show and rely upon at the time of trial that at all times pertinent

hereto, Defendants were engaged in the performance of governmental functions and, therefore, are immune from suit for civil damages for this claim pursuant to the principles of governmental immunity as set forth in case law and the statutes of this State.

3.     The individual Defendants, in whole or in part, are entitled to qualified immunity.

4.     The individual Defendants, in whole or in part, are entitled to absolute immunity.

5.     Defendants, ANDREW BUIKEMA and WENDY BRADFORD, are immune from suit because they took no individual action.

6.     Defendants will show at the time of trial that Plaintiffs have failed to mitigate their damages, if any.

7.     Plaintiffs have suffered no harm upon which an award of monetary damages may be based.

8.     Defendant School District can face no liability for Plaintiffs' claims because it had no policy, practice or custom that abridged any of Plaintiffs' statutory or constitutional rights.

9.     Defendant School District has the right to control the activities of its students and employees and to regulate the time, manner, place and duration of communications disruptive to the educational mission and environment of the school.

10.     The policies adopted by Defendant School District concerning derogatory comments are a reasonable regulation imposed by the School District in order to maintain order within the district, and otherwise regulate conduct on school grounds during school activities in order to prevent disruption of the school's mission and educational environment.

11.     Defendant School District has the authority under state law to determine the information disseminated and/or distributed to the school community.

12.     Defendant School District does not discriminate against individuals' free speech

based on viewpoint.

13.     The proposed expressive conduct by Plaintiffs herein, if allowed to occur, would involve the District in allowing impressionable students and families to be exposed to offensive communications without the knowledge or consent of their parents, thereby creating an endorsement of such views by the District.

14.     The students' attendance at Tri County Area Schools is involuntary, and the allowance of offensive statements creates an unlawful endorsement of such views.

15.     Defendants will show at the time of trial that all actions complained of in Plaintiffs' Complaint were absolutely or qualifiedly privileged pursuant to the Constitutions, statutes and common law of the State of Michigan and of the United States, and Defendants never acted or communicated with malice in reference to the Plaintiffs.

16.     Plaintiffs' claims are not judiciable; Plaintiffs' claims are, or will be, moot.

17.     Plaintiffs' claims are barred by estoppel.

18.     Defendants will show at the time of trial that Plaintiffs were guilty of negligence or other willful conduct which contributed to the incidents complained of, and her conduct in this regard was the sole or partial cause of any injury complained of, and Plaintiffs' recovery should be barred or diminished to the extent of such conduct.

19.     Defendants will show at the time of trial that they were guided by and strictly observed all legal duties and obligations imposed by law or otherwise; and further, that all actions of any of Defendants' agents, servants, employees or associates were careful, prudent, proper and lawful.

20.     Defendants will show and rely upon at the time of trial that there was no discriminatory intent.

21.     Plaintiffs may have failed to exhaust their administrative remedies.

22.     Defendants' actions and speech herein is protected by the First Amendment.

23.     Defendants reserve the right to amend their Answer, including additional affirmative defenses, upon completion of investigation and discovery of this cause.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: June 23, 2023

## RELIANCE UPON JURY DEMAND

Defendants, TRI COUNTY AREA SCHOOLS, ANDREW BUIKEMA and WENDY BRADFORD, by and through its attorneys, GIARMARCO, MULLINS & HORTON, P.C., hereby rely upon the jury demand previously filed by Plaintiffs as to all issues of trial.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: June 23, 2023

## CERTIFICATE OF ELECTRONIC SERVICE

TIMOTHY J. MULLINS states that on June 23, 2023, he did serve a copy of the **Answer, Affirmative Defendants and Reliance on Jury Demand** via the United States District Court electronic transmission.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021