THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| D.A., a minor, by and through his mother B.A.; and X.A., a minor, by and through his mother B.A., <br><br> *Plaintiffs*, <br><br> v. <br><br> TRI COUNTY AREA SCHOOLS; ANDREW BUIKEMA, in his individual capacity; and WENDY BRADFORD, in her individual capacity, <br><br> *Defendants*. | Case Number: 23-cv-423 <br><br> Judge Paul L. Maloney <br> Magistrate Judge Sally J. Berens <br><br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXTEND DATES IN SCHEDULING ORDER** |
| CONOR T. FITZPATRICK <br> (Mich. P78981 / D.C. 90015616) <br> FOUNDATION FOR INDIVIDUAL <br>    RIGHTS AND EXPRESSION <br> 700 Pennsylvania Ave. SE, Ste. 340 <br> Washington, DC 20003 <br> (215) 717-3473 <br> conor.fitzpatrick@thefire.org <br><br> KELLEY BREGENZER <br> (NY. Bar No. 5987482)* <br> FOUNDATION FOR INDIVIDUAL <br>    RIGHTS AND EXPRESSION <br> 510 Walnut St., Ste. 1250 <br> Philadelphia, PA 19106 <br> (215) 717-3473 <br> kelley.bregenzer@thefire.org <br> *W.D. Mich. admission pending <br><br> *Counsel for Plaintiffs* | TIMOTHY J. MULLINS (Mich. P28021) <br> JOHN L. MILLER (Mich. P71913) <br> ANNABEL F. SHEA (Mich. P83750) <br> GIARMARCO, MULLINS <br>    & HORTON, P.C. <br> 101 W. Big Beaver Road, 10th Floor <br> Troy, MI 48084-5280 <br> (248) 457-7020 <br> tmullins@gmhlaw.com <br> jmiller@gmhlaw.com <br> ashea@gmhlaw.com <br><br> *Counsel for Defendants* |

**INTRODUCTION**

This is a case about protecting the First Amendment right of Michigan's public school students to engage in core political speech that does not disrupt the classroom. Defendant Tri County Area Schools is prohibiting its middle and high school students from wearing apparel containing "Let's Go Brandon," a well-known and (intentionally) non-profane political slogan expressing opposition to President of the United States Joe Biden.

As the January 12, 2024, discovery deadline looms, Defendants now seek to extend all deadlines in the Scheduling Order by 60 days, claiming they need more time to complete discovery. But Plaintiffs have already given Defendants three months of extensions to produce the documents they relied on to justify the extraordinary act of censoring non-disruptive political expression in a public school. And the parties have already substantially completed written discovery. There is no good cause to grant Defendants two more months to respond to one outstanding document request. And there is no good cause to extend "all" deadlines in the Case Management Order to accommodate Defendants' tardiness, which would further delay a merits ruling on Defendants' ban on core political speech.

What is more, Defendants' justification for needing nearly half a year to produce documents does not make sense. Defendants say the entire case must be delayed to afford them additional time to respond to Plaintiffs' Document Request 7, which seeks the documents Defendants contend they relied upon to "reasonabl[y] forecast" substantial disruption if students wore "Let's Go Brandon" apparel to school. (Doc. 20, PageID.175.) Defendants say they must review "15,253" disciplinary records from the last five years to make a production. (*Id.*)

They do not. The Supreme Court has been crystal clear that "government justifications for interfering with First Amendment rights" must be those originally relied upon, "not hypothesized

1

or invented post hoc in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022) (internal quotations omitted). Defendants' counsel cannot trawl through thousands of documents to locate materials which arguably *could have* supported a reasonable forecast of substantial disruption; Defendants' defense is strictly limited to those materials upon which they *actually did* rely. And Defendants (presumably) know what those are and can identify them to counsel.

It is time for Defendants to meet their discovery obligations and allow the Court to proceed to the merits. It is well settled that First Amendment rights are uniquely time sensitive. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, the 2024 general election is in less than a year. The "First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for a political office." *Mich. Chamber of Com. v. Land*, 725 F. Supp. 2d 665, 688 (W.D. Mich. 2010) (Maloney, J.) (quoting *Eu v. S. F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)).

Defendants already have had nearly four months to respond to a narrow set of discovery requests seeking information about their justification for banning non-disruptive political speech. There is no reason they need two more to track down the material they supposedly relied upon for the ban, as each passing week further delays the ability of west Michigan students to engage in core political speech. The Court should deny Defendants' motion.

## FACTUAL BACKGROUND

**Plaintiffs Engaged in Non-Disruptive, Core Political Speech at Tri County Middle School.**

"Let's Go Brandon" is political slogan used to express disapproval of President Joe Biden. The slogan originated at an October 2021 NASCAR Xfinity Series race in Talladega, Alabama. (Doc. 1, Compl. ¶ 29.) After the race, won by Brandon Brown, members of the crowd chanted "Fuck Joe Biden" during Brown's post-race interview. (*Id.*) But a TV commentator remarked that the fans were actually shouting "Let's go, Brandon!" (*Id.*)

"Let's Go Brandon" became a popular political slogan for expressing strong opposition to President Biden without using vulgarity. It has appeared in broadcast media, as a chant at political rallies, and multiple members of Congress have used the slogan during floor speeches to express their opposition to President Biden. (*See id.* ¶¶ 33–41) (citing the Congressional Record).

In the spring of 2022, Plaintiffs D.A. and X.A., then students at Tri County Middle School (X.A now attends Tri County High School), wore sweatshirts to Tri County Middle School with the "Let's Go Brandon" slogan. (*See* picture of sweatshirt at *id.*, ¶ 27.) The students wore their "Let's Go Brandon" sweatshirts to school to convey their disapproval of President Biden. (*Id.* ¶ 43.) D.A. and X.A. did not disrupt class, cause a disturbance, or otherwise disrupt the school day when they wore the sweatshirts; they simply went about their day. (*Id.* ¶¶ 57, 64.) Even so, Defendants Andrew Buikema (the TCMS Assistant Principal) and Wendy Bradford (a TCMS English teacher) ordered D.A. and X.A. to remove their "Let's Go Brandon" sweatshirts. (*Id.* ¶¶ 47, 52, 59.) Fearing punishment, they complied. (*Id.* ¶¶ 47–62.)

Tri County Middle School and Tri County High School are part of the Tri County School District (the "School District"). (*Id.* ¶ 12.) On May 27, 2022, D.A. and X.A., through then-counsel, sent the School District a letter demanding it lift the ban on "Let's Go Brandon" apparel. (*Id.* ¶ 88.) The letter noted that D.A. and X.A. did not disrupt school and reminded the School District that D.A. and X.A. have a right to engage in political expression during the school day so long as it does not cause substantial disruption. (Compl. Ex. C, Doc. 1-4 at PageID.64–65) (citing *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969)).

The School District refused to lift the ban. The School District implicitly acknowledged the lack of substantial disruption caused by D.A.'s and X.A.'s sweatshirts, but argued *Bethel School District v. Fraser*, 478 U.S. 675 (1986) "expressly allows a school district to prohibit vulgar

3

and/or profane language at school even absent a showing of substantial disruption to the school environment." (Compl. Ex. D, Doc. 1-5 at PageID.68.)

On April 25, 2023, Plaintiffs sued, seeking injunctive and declaratory relief against the School District's ban on "Let's Go Brandon" apparel, as well as a vague and overbroad dress-code provision prohibiting apparel "disruptive to the teaching and/or learning environment by calling undue attention to oneself." (Doc. 1, Compl. ¶¶ 136–61.)

On July 27, 2023, the parties submitted a Joint Status Report, assuring the Court "the parties believe that all discovery proceedings can be completed by January 13, 2024." (Doc. 10, PageID.136.) To that end, the Court entered a Case Management Order on August 3, 2023, setting a discovery cutoff of January 12, 2023, a dispositive motion deadline of February 13, 2024, and a trial date of October 21, 2024, just 15 days before the 2024 Presidential election. (Doc. 12, PageID.144–45.)

**Plaintiffs Give Defendants Three Months of Extensions, But Defendants Want Five.**

Seeking to ensure timely completion of discovery given the time sensitive nature of a ban on political expression during an election, Plaintiffs served their First Set of Requests for Production to Defendants on August 18, 2023. (*See* Requests at Ex. A.) Plaintiffs requested, among other things, documents Defendants contend caused them to "reasonably forecast a material disruption, substantial disorder, or invasion of the rights of others if students wore 'Let's Go Brandon' or other political apparel." (Ex. A, Req. 7; Compl. ¶ 45.)

Defendants repeatedly requested, and Plaintiffs repeatedly granted, extensions for Defendants to produce documents. (*See* emails between counsel at Doc. 20-9, Doc. 29-2, Doc. 29-3.)[1] In October, the parties had a phone conference to discuss the status of Defendants' discovery

---

[1] A number of exhibits to Defendants' motion had to be re-filed due to non-compliance with Federal Rule of Civil Procedure 5.2(a)(3). *See* Doc. 22 and Doc. 28. Defendants' exhibits are

4

responses. Plaintiffs' counsel stressed on the call, and afterward in writing, "Please do get in touch if any of the [document] searches are returning an inordinately high number of hits. Frankly, we aren't expecting any of our requests to trigger a particularly voluminous response. So we'd much rather work with you so that a production isn't delayed due to y'all having to sift through a bunch of irrelevant chaff." (Doc. 20-7, PageID.203.)

On November 15, 2023, Defendants again requested more time, promising their production "next week, or at the latest the following due to the holiday." (Doc. 20-9, PageID.215.) Plaintiffs (again) agreed, and even *offered* Defendants an additional extension of the deadlines to accommodate Defendants' suggested timeline. (*See id.,* PageID.214) (suggesting revised "due date for Defendants' discovery production" of November 29, 2023.)

But on November 20, 2023, more than two months after the original due date, Defendants' counsel requested a blanket 60-day extension to all dates. (*Id.*) Defendants' counsel protested "we have a really busy next few months." (*Id.*)

Plaintiffs did not consent, explaining, "we must object to a 60-day extension. We served our discovery requests more than three months ago, and [our] proposed extension would have resulted in Defendants having nearly four full months to collect and review documents." (Doc. 20-10, PageID.223.) Plaintiffs explained that "while we fully appreciate Defendants have other cases (as do we), we cannot consent to this case being placed on the back burner due to the resulting delay in securing a ruling regarding the First Amendment issues." (*Id.*)

On November 29, 2023, Defendants' counsel again requested a 60-day extension, claiming Defendants' counsel were "still working on compiling the documents responsive to RFP No. 6."

---

now split between docket event 20 (their original motion) and docket event 29 (Defendants' re-filed exhibits needing redactions).

5

(Doc. 20-12, PageID.238.)[2] Plaintiffs' counsel responded that "given the time-sensitive nature of the political speech at issue in this case, we could not consent to such a long extension." (*see* Ex. B, 11/29/23 email from C. Fitzpatrick to A. Shea.) Plaintiffs' counsel reiterated, "if there are types of documents taking up time and energy which are of unlikely relevance to the case," Defendants' counsel should let Plaintiffs' counsel know so they could work together to reduce the burden. (*Id.*). But unlike prior months, where Defendants worked with Plaintiffs' counsel to reduce Defendants' discovery burden (*see* Doc. 20-7, PageID.202), this time Defendants refused to cooperate and instead moved for a 60-day extension.

## ARGUMENT

Defendants' request to extend the Case Management Order dates should be denied because Defendants cannot demonstrate "good cause." Fed. R. Civ. P. 16(b)(4) (a scheduling order may be "modified only for good cause and with the judge's consent"). Defendants have not met their burden to show they cannot reasonably meet the Court's deadlines despite diligently trying to do so. Fed. R. Civ. P. 16, 1983 advisory committee's notes to 1983 amendment; *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). An extension is especially inappropriate here, since "[Plaintiffs] will suffer prejudice by virtue of the amendment" to the Case Management Order. *Leary*, 349 F.3d at 906.

**I.    Defendants' Remaining Written Discovery Obligations Are Minimal, Obviating the Need for a 60-Day Extension.**

Defendants' remaining obligations to respond to written discovery are not as broad as they claim. The sole response Defendants claim is outstanding is their production for Plaintiffs' Request

---

[2] As noted above, Defendants' *motion* is predicated upon supposedly needing additional time to respond to Document Request 7. (Doc. 20, PageID.175.) Defendants' pre-motion correspondence requesting a two-month delay referenced only Document Request 6.

for Production 7. (Doc. 20, PageID.180.)[3] Request 7 asks for "all documents and communications supporting your denial of Paragraph 45 of the Complaint." (Ex. A.) Paragraph 45 of the Complaint alleges, "Upon information and belief, before February 2022 and continuing through the present, Defendants have not received any information which would lead them to reasonably forecast a material disruption, substantial disorder, or invasions of the rights of others if students wore 'Let's Go Brandon' or other political apparel." (Doc. 1, Compl. ¶ 45.)

Defendants say they need more time because although they "w[ere] able to pull 5 years of discipline records from the Middle and High School using a key word search[,] this resulted in 15,253 discipline entries, which is more voluminous than expected." (Doc. 20, PageID.180.) But (and this could have been cleared up had Defendants' counsel held a meet-and-confer call), Plaintiffs do not want or expect Defendants to review every discipline record from the last five years. That's unnecessary and a waste of Defendants' time. Plaintiffs seek the documents Defendants contend they relied upon to reasonably forecast substantial disruption from "Let's Go Brandon" apparel in spring 2022 and the documents Defendants are relying upon to have that same forecast today. Defendants presumably know what those are (having relied on them) and should be able to quickly identify those materials to their counsel.

Plaintiffs' counsel reiterated the narrow scope of Request 7 to Defendants' counsel by phone and email over a month ago:

> With respect to Request for Production 7: we explained we're seeking documents and communications reflecting Defendants' basis for why they believe they reasonably forecast a material disruption, substantial disorder, or invasion of the rights of others due to "Let's Go Brandon" apparel. We referenced other school speech cases where schools pointed to, for example, prior gang activity around certain symbols or flags as a basis for a restriction. Defendants agreed that the

---

[3] Recall, however, that Defendants' pre-motion basis for a 60-day extension was Request 6. (Doc. 20-12, PageID.238.)

>clarifications resolved the non-FERPA objections and believe they will be able to make a production of any responsive documents.

(Doc. 20-7, PageID.202.)

The discovery period is not for Defendants' counsel to dig through thousands of pages of disciplinary records to retroactively justify Defendants' suppression of non-disruptive political speech. Rather, a substantial disruption-based defense would have to stand or fall based on Defendants' *actual* decision-making process and bases at the time of the restriction. In any event, Plaintiffs requested only those documents upon which Defendants actually did rely, so there is no reason to search the rest.

As a final (but critical) note, it is important to recall Defendants may only rely on the contemporaneous justifications provided to Plaintiffs in June 2022 to defend their speech restrictions. *See, e.g.*, *Bremerton Sch. Dist.*, 142 S. Ct. at 2432 n.8 (refusing a school district's explanation for subduing a high school coach's quiet prayer after football games because it "never raised concerns along these lines in its contemporaneous correspondence" with the coach); *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25–26 (1st Cir. 2020) (collecting cases for the same proposition). Plaintiffs will oppose any attempt by Defendants to justify the "Let's Go Brandon" ban on a basis outside the June 2022 letter—for example, by arguing it reasonably forecast substantial disruption under *Tinker*—since Defendants did not raise those concerns in their contemporaneous correspondence. However, because Defendants assert disruption as a basis for their actions in their affirmative defenses (*see* Doc. 7, PageID.123), Plaintiffs are seeking discovery regarding the claimed disruption in the interest of caution and completeness.

## II.     There Is No Basis to Extend "All" Dates in the Scheduling Order.

Defendants ask the Court to extend "all dates in the Scheduling Order by 60 days." (Doc. 20, PageID.173) (emphasis added). Defendants say, in addition to responding to Document

8

Request 7, they need more time to "take the depositions of minor Plaintiffs and their parents." (Doc. 20, PageID.175.) But Plaintiffs served their complete discovery responses on October 9, 2023. (*See* Ex. C, 10/9/23 email from C. Fitzpatrick to Defendants' counsel). Defendants did not, and still have not, noticed any depositions.

If this Court is inclined to grant any extension, which, for the reasons above it should not, the Court's order should make clear that, consistent with Rule 6(b)(1)(B), the extension is solely for deadlines not yet reached and cannot serve as a mulligan for deadlines already missed. Federal Rule of Civil Procedure 6(b)(1)(B) provides that, unlike future deadlines, expired deadlines may only be extended "if the party failed to act because of excusable neglect." Defendants do not contend any of the expired dates meet this requirement. *See, e.g.*, *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 453 (E.D. Mich. 2017) (applying Rule 6(b)(1)(B) and denying request to extend expert disclosure deadline because the requesting party "did not request an extension of time to make her expert disclosures until after they were due").

Extending the expired deadlines would also place additional material prejudice on Plaintiffs. For example, the Case Management Order required both sides to serve their expert reports by November 22, 2023. (Doc. 12, PageID.144.) Plaintiffs served their expert's report on November 22, 2023. Defendants did not, and, indeed, still have not served an expert report. Especially given the time sensitivity of First Amendment claims discussed in the next section, there is no basis to allow Defendants a do-over regarding already-expired deadlines.

### III. First Amendment Rights Are Particularly Time Sensitive.

Students have "fundamental rights which the State must respect," including "freedom of expression." *Tinker*, 393 U.S. at 511. Indeed, students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506 (affirming middle school students' First Amendment right to wear armbands protesting Vietnam War to school).

9

The Supreme Court explained the Founders fashioned the First Amendment "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (internal quotation omitted). Judge Maloney noted the Supreme Court "has gone so far as to declare that instruments articulating or disseminating ideas and opinions in the political arena are 'weapons in the defense of liberty.'" *Mich. Chamber of Com.*, 725 F. Supp. 2d at 685 (quoting *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938)).

It should come as no surprise, therefore, that government abridgments of free speech are especially time sensitive. Indeed, abridgments of First Amendment rights qualify as *per se* irreparable harm for purposes of a preliminary injunction. *See Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") The necessity of vindicating Americans' First Amendment rights is especially urgent during election season. "The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Mich. Chamber of Com.*, 725 F. Supp. 2d at 688 (quoting *Eu*, 489 U.S. at 223). *Cf. Martin v. Kelley*, 803 F.2d 236, 240 (6th Cir. 1986) ("The First Amendment freedoms, including the freedom of speech, have always occupied a preferred status in constitutional jurisprudence for it is these freedoms which ensure a free and democratic society.")

The vindication of Plaintiffs' (and all Tri County Area Schools students') First Amendment rights presents this Court with a time sensitivity absent in normal business or civil litigation. That is especially true here, less than a year from a general election, where Plaintiffs' political speech addresses the presumptive Democratic Party nominee for President of the United States. An additional two months of delay to Defendants producing documents (and the concomitant delay in

10

summary judgment briefing, trial, and judgment) is two more months where the students at Tri County Middle School and Tri County High School will have to do without the ability to exercise their full range of First Amendment expressive rights.

Plaintiffs served their discovery requests at the earliest possible opportunity, in mid-August 2023, precisely to avoid this situation. It should not, and, for the sake of Michigan's public school students, cannot, take *six months* to respond to a first set of document requests. Plaintiffs have demonstrated at every turn they are ready and willing to help Defendants ease their discovery burden and accommodate their other cases. But Defendants' delay should end here.

## **CONCLUSION**

Plaintiffs respectfully request the Court deny Defendants' motion.

Dated: December 13, 2023

Respectfully Submitted,

/s/ Conor T. Fitzpatrick
CONOR T. FITZPATRICK*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

KELLEY BREGENZER
(NY. Bar No. 5987482)*
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Ste. 1250
Philadelphia, PA 19106
(215) 717-3473
kelley.bregenzer@thefire.org

*W.D. Mich. admission pending

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2023, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ *Conor T. Fitzpatrick*
CONOR T. FITZPATRICK
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION